# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

```
-----------------------------------------------------
                                    :
COMMODITY FUTURES TRADING           :      Case No. 19-cv-8409-PAE
COMMISSION,                         :
                                    :
            Plaintiff,              :
                                    :
      v.                            :
                                    :
FUTURESFX and SIMON JOUSEF,         :
                                    :
            Defendants.             :
                                    :
-----------------------------------------------------
```

## CONSENT ORDER FOR PERMANENT INJUNCTION, CIVIL MONETARY PENALTIES, AND OTHER EQUITABLE RELIEF AGAINST DEFENDANTS FUTURESFX AND SIMON JOUSEF

### I.    INTRODUCTION

On September 30, 2019, Plaintiff Commodity Futures Trading Commission ("Commission" or "CFTC") filed a complaint against Defendant Simon Jousef ("Jousef") and his business FuturesFX (collectively, "Defendants"), seeking injunctive and other equitable relief, as well as restitution and the imposition of civil monetary penalties, for violations of the Commodity Exchange Act (the "Act"), 7 U.S.C. §§ 1-26 (2018), and the Commission's Regulations ("Regulation"), 17 C.F.R. §§ 1-190 (2019).

### II.  CONSENTS AND AGREEMENTS

To effect settlement of all charges alleged in the Complaint against Defendants without a trial on the merits or any further judicial proceedings, Defendants:

1.      Consent to the entry of this Consent Order for Permanent Injunction, Civil Monetary Penalties and Other Equitable Relief against Defendants FuturesFX and Simon Jousef ("Consent Order");

2.      Affirm that they have read and agreed to this Consent Order voluntarily, and that no promise, other than as specifically contained herein, or threat, has been made by the Commission or any member, officer, agent, or representative thereof, or by any other person, to induce consent to this Consent Order;

3.      Acknowledge service of the summons and Complaint in this action;

4.      Admit the jurisdiction of this Court over them and the subject matter of this action pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1 (2018); and pursuant to 28 U.S.C. §§ 1331 and 1345 (2018);

5.      Admit the jurisdiction of the Commission over the conduct and transactions at issue in this action pursuant to the Act, 7 U.S.C. §§ 1-26 (2018), including the foreign exchange ("forex") transactions at issue in this case pursuant to Section 2(c)(2)(C) of the Act, 7 U.S.C. § 2(c)(2)(C) (2018);

6.      Admit that venue properly lies with this Court pursuant to Section 6c(e) of the Act, 7 U.S.C. § 13a-1(e) (2018);

7.      Waive:

a.      Any and all claims that they may possess under the Equal Access to Justice Act, 5 U.S.C. § 504 (2018) and 28 U.S.C. § 2412 (2018), and/or the rules promulgated by the Commission in conformity therewith, Part 148 of the Regulations, 17 C.F.R. pt. 148 (2019), relating to, or arising from, this action;

2

b.      Any and all claims that they may possess under the Small Business

Regulatory Enforcement Fairness Act of 1996, Pub. L. No. 104-121, tit. II, §§ 201-253, 110 Stat.

847, 857-74 (1996), (codified as amended at 28 U.S.C. § 2412 and in scattered sections of 5

U.S.C. and 15 U.S.C.), relating to, or arising from, this action;

c.      Any claim of Double Jeopardy based upon the institution of this action or

the entry in this action of any order imposing a civil monetary penalty or any other relief,

including this Consent Order; and

d.      Any and all rights of appeal from this action;

8.      Consent to the continued jurisdiction of this Court over them for the purpose of

implementing and enforcing the terms and conditions of this Consent Order and for any other

purpose relevant to this action, even if either FuturesFX or Jousef now or in the future reside

outside the jurisdiction of this Court;

9.      Agree that they will not oppose enforcement of this Consent Order on the ground,

if any exists, that it fails to comply with Rule 65(d) of the Federal Rules of Civil Procedure and

hereby waive any objection based thereon;

10.     Agree that neither they nor any of their agents or employees under their authority

or control shall take any action or make any public statement denying, directly or indirectly, any

allegation in the Complaint or the Findings of Fact or Conclusions of Law in this Consent Order,

or creating or tending to create the impression that the Complaint and/or this Consent Order is

without a factual basis; provided, however, that nothing in this provision shall affect their:

(a) testimonial obligations, or (b) right to take legal positions in other proceedings to which the

Commission is not a party;

11.     Agree that they shall comply with this Consent Order and shall undertake all steps necessary to ensure that all of their agents and/or employees under their authority or control understand and comply with this Consent Order;

12.     Consent to the entry of this Consent Order without admitting or denying the allegations of the Complaint or any findings or conclusions in this Consent Order, except as to jurisdiction and venue, which they admit;

13.     Consent to the use of the findings and conclusions in this Consent Order in this proceeding and in any other proceeding brought by the Commission or to which the Commission is a party or claimant, and agree that they shall be taken as true and correct and be given preclusive effect therein, without further proof;

14.     Do not consent, however, to the use of this Consent Order, or the findings and conclusions herein, as the sole basis for any other proceeding brought by the Commission or to which the Commission is a party, other than:  a proceeding in bankruptcy or receivership, or a proceeding to enforce the terms of this Consent Order;

15.     Agree to provide immediate notice to this Court and the Commission by certified mail, in the manner required by paragraph 90 of Part VI of this Consent Order, of any bankruptcy proceeding filed by, on behalf of, or against them, whether inside or outside the United States; and

16.     Agree that no provision of this Consent Order shall in any way limit or impair the ability of any other person or entity to seek any legal or equitable remedy against Defendants in any other proceeding.

## III. FINDINGS AND CONCLUSIONS

This Court, being fully advised in the premises, finds that there is good cause for the entry of this Consent Order and that there is no just reason for delay. The Court, therefore, directs the entry of the following Findings of Fact, Conclusions of Law, and equitable relief and, pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1 (2018), orders the entry of a permanent injunction, restitution, and civil monetary penalties. The findings and conclusions in this Consent Order are not binding on any other party to this action.

**THE PARTIES AGREE AND THE COURT HEREBY FINDS:**

**A.     Findings of Fact**

### *The Parties To This Consent Order*

17.     Plaintiff **Commodity Futures Trading Commission** is an independent federal regulatory agency charged by Congress with the administration and enforcement of the Act, 7 U.S.C. §§ 1-26 (2018), and the Regulations promulgated thereunder, 17 C.F.R. §§ 1-190 (2019).

18.     Defendant **FuturesFX** is a sole proprietorship licensed in Ontario, Canada with a principal place of business in Ontario, Canada. From at least July 1, 2014 and continuing to on or about January 31, 2016 (the "Relevant Period"), FuturesFX was in the business of marketing and providing access to an online trading room referenced as a "Live Trading Room," educational videos, and online support (collectively, the "Trading System"). FuturesFX was owned, operated, and controlled by Jousef. FuturesFX has never been registered with the Commission in any capacity.

19.     Defendant **Simon Jousef** is an individual who resides in Ontario, Canada. During the Relevant Period, Jousef owned and operated FuturesFX, solicited members and prospective

members, including members in the United States (collectively, "Members") to purchase access

to his Trading System, and commonly conducted the "Live Trading Room."  Jousef was a

principal of 6716571 Canada, Inc. ("Canada Inc."), a company that he incorporated in February

2007 and dissolved in December 2013.  Canada Inc. was registered with the Commission as a

commodity trading advisor ("CTA") pursuant to Section 4n of the Act, 7 U.S.C. § 6n (2018),

until the time of its dissolution.  Jousef, however, has never been registered with the Commission

as a CTA; indeed, he has never been registered with the Commission in any capacity.

### *Defendants Solicited Members to Purchase Access to Their Trading System*

20.     On February 8, 2007, Jousef incorporated Canada, Inc. in Ontario, Canada, which

did business as FuturesFX.  The stated business activity on the business license for FuturesFX

was "teaching and education."  On June 18, 2013, Jousef obtained a business license for

"FuturesFX Library" as a sole proprietorship in Ontario which expired on June 17, 2018.  The

stated business activity on the business license for FuturesFX Library was an "on-line video

library for investors."  Jousef operated FuturesFX through a website called futuresfx.ca.

21.     At futuresfx.ca, during the Relevant Period, Jousef represented himself as a CTA

with thirteen years of trading experience and marketed his Trading System for trading forex and

commodity futures contracts such as crude oil, gold, and the E-mini S&P 500 futures contracts.

22.     As part of his marketing strategy, Jousef offered free access to the "Live Trading

Room" where prospective Members could observe him ostensibly live trading forex and futures

contracts using his trading methodology.

23.     For a membership fee, Members gained entry to a "member's area" where they

had unlimited access to Defendants' "Live Trading Room" as well as educational videos and

online support.

24.     Sometime in 2014, Jousef transitioned the "Live Trading Room" to a website called globaltraderoom.com, but the educational videos remained accessible on the futuresfx.ca website.  Both websites referred to each other.  At globaltraderoom.com, Jousef continued to represent himself as a CTA who "trades his live account in front of students" in "his live trading room sessions at FuturesFX.ca and GlobalTradeRoom.com."

25.     Both the futuresfx.ca and globaltraderoom.com websites were available to and accessed by Members, including a Member who resides within this District.

26.     Members who were interested in gaining access to Jousef's Trading System would receive instructions to provide payment through PayPal.  The PayPal account was registered with a business name of "Futures FX."

27.     Monies paid by Members through PayPal would be directed to bank accounts in the United States and Canada that were owned and/or controlled by Jousef.

28.     Members were sent electronic documents for signature for "access to the Trading Library, FuturesFX, and the Global Trade Room Member's Area."

29.     Defendants charged Members up to approximately $9,000 to receive this access to the Trading System, which included access to educational videos and online trading rooms.

30.     During the Relevant Period, Defendants received approximately $1.3 million from approximately 300 FuturesFX Members in both the United States and other countries.

### Defendants' Conduct Regarding Live Trading

31.     As part of their marketing strategy, Defendants offered Members access to a "Live Trading Room."

32.     On the futuresfx.ca website, Defendants advertised "3 LIVE trading rooms" and posted numerous testimonials that described live trading taking place in the "Live Trading Room," including the following:

> a.      "[W]e get to hear and see live trades happening all the time.  Being able to see and take live entries with very tight stops can help a trader immensely. Futures FX has also launched their new GTR (Global Trade Room) and if one were inclined, you could attend a Live Trade Room around the clock in all major time zones . . . ."

> b.      "Needless to say, after doing research, watching his videos, and witnessing Simon use the Price Magnet indicator to trade live in his live trade room, I discovered that Simon was not engaging in any hyperbole."

> c.      "Simon is the REAL DEAL.  Simon is a certified CTA.  Simon trades LIVE in front of you.  You see his LIVE CHART with his actual account, and you see him placing the actual trades."

> d.      "What is unique about the room is Simon trades a LIVE account right in front of the room."

> e.      "Simon trades his account live and we all see it."

33.     Jousef also indicated on his futuresfx.ca website that he trades outside the "Live Trading Room" by stating the following:  "It is not an easy task to trade and teach at the same time therefore my students understand when I miss good trades.  I do however trade beyond [Live Trading Room] hours to reach my personal profit targets."

34.     At globaltraderoom.com, Jousef's personal biography states that "he trades his live account in front of students and teaches the exact same strategies and tape reading methods he used during live trading competitions daily during his live trading room sessions at FuturesFx.ca and GlobalTradeRoom.com."

35.     Globaltraderoom.com also includes an image of booklets and CDs with the "Global Trade Room" label, which advertise, among other things, "Real Live Trading in 2 Different Sessions," and "Live Trading every day in Real Time with live accounts."

36.     Members who registered to access a free trial "Live Trading Room" received an email from Jousef which included the following statement describing a "Live" trading room session at globaltraderoom.com:  "Please be advised that the trades being called are in a live account with real money so your entries may differ."  During the free trial "Live" trade room sessions, Members also heard Jousef indicate that he was executing actual trades in a live account.

37.     Jousef, however, never traded live in the "Live Trading Room" at either futuresfx.ca or globaltraderoom.com during the Relevant Period.  All of his trades were either hypothetical or simulated.  He did not disclose to Members that all of his trades in the "Live Trading Room" were either hypothetical or simulated.

38.     Jousef admitted that he never traded in a live account outside the "Live Trading Room" and never traded live during the Relevant Period.

### Defendants' Conduct Regarding Performance, Profitability, and Risk of Loss

39.     Defendants made false statements to Members regarding the performance, profitability, and risk of loss when using their Trading System, as set forth below.

40.     In a description of their trading methodology at the futuresfx.ca website, Defendants described one method as being "about 80% winner."  On the globaltraderoom.com website, Defendants described their trading system as "[a] Guaranteed Winning Formula."

41.     Defendants also advertised "Swing Trade Recommendations" where they cited specific instances of historical trades where Jousef earned profits described in terms of both specific dollar amounts and "ticks" which refer to a specific price increment.

42.     Globaltraderoom.com included spreadsheets that purported to describe "GTR's Performance Track Record" in 2014 and parts of 2015.  Those spreadsheets showed profits in

9

dollar figures, including the representation that total profits in 2014 were $308,160, in addition to

a statement that read: "These results are with a live account with real money.  Your results may

vary."

43.     In his "Live Trading Room," Jousef also described trading where the majority of

his trades were profitable.

44.     At the globaltraderoom.com website, there is a section called "Free Money."

    a.     It begins with the following: "Is there really such a thing as free money?
    Yes.  Does free money really exist?  Yes.  So what's the catch?  No catch.
    What's it cost?  Absolutely nothing."

    b.     This section goes on to compare the "[t]housands of daytrading rooms
    with outrageous, unproven, and unverified hypes" to the "honest" and
    "trustworthy" Global Trade Room, which "[h]as been trading live in front of
    students every day since 2005. A live account. By a licensed CTA. . . . Simon
    Jousef, owner and head trader at GlobalTradeRoom.com has been trading his live
    account in front of students every day since 2005."

    c.     This "Free Money" section goes on to claim that, had a prospective
    student taken every trade called out during the free live trading room session at
    globaltraderoom.com in 2014, that investor would have earned a 640% return on
    investment.

45.     In at least one email advertisement to a prospective Member, Jousef represented

that the "Live Room avg. over 120 ticks a day" and it includes the following quote: "[H]aven't

had a losing week in the last 12 months!"

46.     However, every reference to performance, profitability, and risk of loss were not

true because Jousef admitted that he never traded live in an actual trading account during the

Relevant Period.

### Jousef's Statements to NFA and Defendants' Representations Regarding Jousef's Background

47.     The National Futures Association ("NFA"), which is designated by the CFTC as a

registered futures association pursuant to Section 17 of the Act, 7 U.S.C. § 21 (2018), is a self-

regulatory organization for the U.S. derivatives industry.  The CFTC delegated to the NFA responsibilities regarding CTA registration.  To be registered with the Commission as a CTA, an applicant must not only satisfy the NFA's registration requirements, but also submit annual updates with the NFA.

48.     On February 8, 2007, Jousef incorporated Canada, Inc. which did business as FuturesFX.  On June 6, 2007, Jousef registered Canada, Inc. with the Commission as a CTA. However, pursuant to Jousef's voluntary application for dissolution, Canada, Inc. was dissolved on December 7, 2013, and thus was no longer registered with the Commission as a CTA as of that date.

49.     After Canada, Inc.'s dissolution, Jousef received notices from the NFA on behalf of the Commission to provide updates on Canada, Inc.'s CTA registration.  These notices clearly indicate that Canada, Inc. is the registrant.

50.     On August 14, 2014, after Canada, Inc. was dissolved, Jousef filed an annual CTA registration update for Canada, Inc. with the NFA indicating that Canada, Inc. remained a Canadian corporation and that Jousef remained the President of Canada, Inc.

51.     On June 26, 2015, Jousef filed another annual CTA registration update for Canada, Inc. with the NFA indicating that Canada, Inc. remained a Canadian corporation and that Jousef remained the President of Canada, Inc.

52.     Even after Canada, Inc. was no longer a viable business entity and, therefore, no longer a CTA, and notwithstanding that Jousef had never been registered with the Commission as a CTA or in any other capacity, Jousef continued to represent himself as a CTA, including on the futuresfx.ca and globaltraderoom.com websites, during the Relevant Period.

53.     Defendants also described Jousef as a trader with thirteen years of trading experience, a "Master Trader," the "Head Trader," and as someone who was "voted as one of the top five traders in the world," despite the fact that he admitted that he never traded live during the "Live Trading Room."

### *Defendants Failed to Make the Required Disclosures*

54.     During the Relevant Period, Defendants placed testimonials on the futuresfx.ca and globaltraderoom.com websites, as well as on email advertisements, without prominently disclosing that such testimonials may not be representative of the experience of other Members, or that such testimonials were not guarantees of future performance.

55.     During the Relevant Period, Defendants referred to the performance and profitability of simulated or hypothetical trades, but they did not prominently disclose that such results were the result of simulated or hypothetical trades.

56.     On globaltraderoom.com's "Performance Track Record" section, Defendants described their performance as the result of trades "with a live account with real money." Although they included a general disclosure about hypothetical or simulated performance, they did not state that their performance results were hypothetical or simulated.

### *Jousef Controlled FuturesFX*

57.     During the Relevant Period, Jousef was the sole owner of FuturesFX.

58.     During the Relevant Period, Jousef was in charge of all of FuturesFX's operations, and responsible for all operational decisions.

59.     During the Relevant Period, Jousef controlled the content on the futuresfx.ca and globaltraderoom.com websites.

60.     During the Relevant Period, Jousef had the authority to hire, pay, authorize payment to, and fire FuturesFX employees, agents, and contractors, including employees, agents, and contractors located in the United States.

61.     During the Relevant Period, Jousef had the authority to direct payments and transfers for FuturesFX's bank accounts, including a bank account located in the United States.

**B.     Conclusions of Law**

### *Jurisdiction and Venue*

62.     The Court has jurisdiction over this action pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1 (2018), which provides that whenever it shall appear to the Commission that any person has engaged, is engaging, or is about to engage in any act or practice constituting a violation of any provision of the Act or any rule, regulation, or order promulgated thereunder, the Commission may bring an action in the proper District Court of the United States against such person to enjoin such practice, or to enforce compliance with the Act, or any rule, regulation, or order thereunder.  The Court also has jurisdiction pursuant to 28 U.S.C. § 1331 (2018) (codifying federal question jurisdiction) and 28 U.S.C. § 1345 (2018) (providing that district courts have original jurisdiction over civil actions commenced by the United States or by any agency expressly authorized to sue by Act of Congress).  The Commission has jurisdiction over the forex transactions at issue in this case pursuant to Section 2(c)(2)(C) of the Act, 7 U.S.C. § 2(c)(2)(C) (2018).

63.     Venue properly lies with this Court pursuant to Section 6c(e) of the Act, 7 U.S.C. § 13a-1(e) (2018), because Defendants transacted business in this District, and certain transactions, acts, and practices alleged in this Complaint occurred, are occurring, and/or are about to occur within this District.

***Fraud By Misrepresentations and Omissions Regarding Live Trading,
Profitability, Performance, Risk of Loss, and Background***

64.      By the conduct described in paragraphs 17 through 61 above, Jousef, acting as a

CTA, through the use of the mails or other means or instrumentality of interstate commerce

(including by telephone, email, and the FuturesFX and GTR websites or in any advertising),

violated Section 4o(1)(A) and (B) of the Act, 7 U.S.C. § 6o(1)(A), (B) (2018), and Commission

Regulation 4.41(a)(1) and (2), 17 C.F.R. § 4.41(a)(1), (2) (2019), by making misrepresentations

and material omissions to Clients, including by:

> a.      Telling Members that Jousef executed live trades in a "Live Trading
> Room" when in fact all of Jousef's trading in the "Live Trading Room" was
> simulated or hypothetical;
>
> b.      Telling Members that Defendants' trading system earned significant
> profits in dollar figures and describing their trading system as being highly
> successful when Jousef admitted that he never executed any actual trades in a live
> account; and
>
> c.      Telling Members that Jousef was a CTA even after the corporation that
> was registered as a CTA had been dissolved, and telling Members that Jousef had
> years of trading experience when in fact Jousef did not trade on a live account in
> the "Live Trading Room."

65.      By the conduct described in paragraphs 17 through 61 above, Defendants

employed a scheme or artifice to defraud Members in connection with futures contracts traded on

registered entities by making misrepresentations and material omissions to Members, in violation

of Section 6(c)(1) of the Act, 7 U.S.C. § 9(1) (2018), and Commission Regulation 180.1(a),

17 C.F.R. § 180.1(a) (2019), including by:

> a.      Telling Members that Jousef executed live trades in a "Live Trading
> Room" when in fact all of Jousef's trading in the "Live Trading Room" was
> simulated or hypothetical;
>
> b.      Telling Members that Defendants' trading system earned significant
> profits in dollar figures and describing their trading system as being highly

successful when Jousef admitted that he never executed any actual trades in a live account; and

c.       Telling Members that Jousef was a CTA even after the corporation that was registered as a CTA had been dissolved, and telling Members that Jousef had years of trading experience when in fact Jousef did not trade on a live account in the "Live Trading Room."

### *Failure to Provide Required Disclosures*

66.       By the conduct described in paragraphs 17 through 61 above, Defendants, while acting as a CTA, referred to testimonials on both the futuresfx.ca and globaltraderoom.com websites, as well as in email advertisements without prominently disclosing that the testimonials were not representative of the experience of other Members and that the testimonials were no guarantee of future performance or success, in violation of 17 C.F.R. § 4.41(a)(3) (2019).

67.       By the conduct described in paragraphs 17 through 61 above, Defendants published the performance results of simulated or hypothetical trades but failed to prominently disclose the prescribed disclosures in immediate proximity to this performance information, in violation of 17 C.F.R. § 4.41(b).

### *False or Misleading Statements to the NFA*

68.       By the conduct described in paragraphs 17 through 61 above, Jousef knowingly made false or misleading statements regarding material facts to the NFA when he submitted annual CTA registration updates to the NFA indicating that Canada, Inc. remained a Canadian corporation and that Jousef remained the President of Canada, Inc. when, in fact, he knew that he had voluntarily dissolved Canada, Inc. at the time he made those false or misleading statements, in violation of Section 9(a)(3) of the Act, 7 U.S.C. § 13(a)(3) (2018).

### *Principal and Agent, and Control Person Liability*

69.     The foregoing acts, omissions, and failures of FuturesFX's employees and agents, including Jousef, occurred within the scope of their employment, office, or agency with FuturesFX.  Therefore, pursuant to Section 2(a)(1)(B) of the Act, 7 U.S.C. § 2(a)(1)(B) (2018), and Commission Regulation 1.2, 17 C.F.R. § 1.2 (2019), FuturesFX is liable for these acts, omissions, and failures in violation of 7 U.S.C. §§ 6*o*(1)(A) and (B) and 9(1), and 17 C.F.R. §§ 4.41(a)(1)-(3), (b), and 180.1(a).

70.     Jousef controlled FuturesFX directly or indirectly and did not act in good faith or knowingly induced, directly or indirectly, FuturesFX's acts in violation of the Act and Regulations.  Therefore, pursuant to Section 13(b) of the Act, 7 U.S.C. § 13c(b) (2018), Jousef is liable for FuturesFX's violations of 7 U.S.C. §§ 6*o*(1)(A) and (B) and 9(1), and 17 C.F.R. §§ 4.41(a)(1)-(3), (b), and 180.1(a).

71.     Unless restrained and enjoined by this Court, there is a reasonable likelihood that Defendants will continue to engage in the acts and practices alleged in the Complaint and in similar acts and practices in violation of the Act and Regulations.

## IV.  PERMANENT INJUNCTION

**IT IS HEREBY ORDERED THAT:**

72.     Based upon and in connection with the foregoing conduct, pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1(2018), Defendants are permanently restrained, enjoined, and prohibited from directly or indirectly:

        a.     as a CTA, using the mails or any means or instrumentality of interstate commerce to directly or indirectly employ any device, scheme, or artifice,

16

including any advertising, to defraud any client or participant or prospective client

or participant, or engage in any transaction, practice, or course of business which

operates as a fraud or deceit upon any client or participant or prospective client or

participant, in violation of Section 4$o$(1)(A) and (B) of the Act, 7 U.S.C.

§ 6$o$(1)(A) and (B) (2018), and Commission Regulation 4.41(a)(1) and (2),

17 C.F.R. § 4.41(a)(1) and (2) (2019);

b.      using or employing, or attempting to use or employ, any manipulative

device, scheme, or artifice to defraud; making, or attempting to make, any untrue

or misleading statement of a material fact or omitting to state a material fact

necessary in order to make the statements made not true or misleading; engaging,

or attempting to engage, in any act, practice, or course of business, which operates

or would operate as a fraud or deceit upon any person in violation of Section

6(c)(1) of the Act, 7 U.S.C. § 9(c)(1) (2018), and Commission Regulation

180.1(a), 17 C.F.R. § 180.1(a) (2019);

c.      as a CTA, or any principal thereof, advertising in a manner which refers to

any testimonial, unless the advertisement or sales literature providing the

testimonial prominently discloses that the testimonial may not be representative of

the experience of other clients and that the testimonial is no guarantee of future

performance or success, as required by Commission Regulation 4.41(a)(3),

17 C.F.R. § 4.41(a)(3) (2019); and

d.      presenting the performance of any simulated or hypothetical commodity

interest account, unless a prescribed statement (stating, among other things, the

inherent limitations of hypothetical or simulated performance data) is disclosed

prominently and in immediate proximity to the simulated or hypothetical

performance in formation being presented, as required by 17 C.F.R. § 4.41(b).

73.     Jousef is further permanently restrained, enjoined, and prohibited from directly or

indirectly knowingly making, or causing to be made, any statement in any application, report, or

document required to be filed under the Act or any rule or regulation thereunder or any

undertaking contained in a registration statement required under the Act, or by any registered

entity or registered futures association in connection with an application for membership or

participation therein or to become associated with a member thereof, which statement was false

or misleading with respect to any material fact, or knowingly omitting any material fact required

to be stated therein or necessary to make the statements therein not misleading, in violation of

Section 9(a)(3) of the Act, 7 U.S.C. § 13(a)(3) (2018).

74.     Defendants are also permanently restrained, enjoined, and prohibited from

directly or indirectly:

> a.      Controlling or directing the trading for or on behalf of any other person or
>
> entity, whether by power of attorney or otherwise, in any account involving
>
> "commodity interests" (as that term is defined in Regulation 1.3, 17 C.F.R. § 1.3
>
> (2018);
>
> b.      Soliciting, receiving, or accepting any funds from any person for the
>
> purpose of purchasing or selling any commodity interests;
>
> c.      Applying for registration or claiming exemption from registration with the
>
> Commission in any capacity, and engaging in any activity requiring such
>
> registration or exemption from registration with the Commission except as

provided for in Commission Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2019); and

    d.       Acting as a principal (as that term is defined in Commission Regulation 3.1(a), 17 C.F.R. § 3.1(a) (2019)), agent or any other officer or employee of any person (as that term is defined in Section 1a(38) of the Act, 7 U.S.C. § 1a(38) (2018)), registered, exempted from registration or required to be registered with the Commission except as provided for in Commission Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2019).

## V. RESTITUTION AND CIVIL MONETARY PENALTY

### A.    Restitution

75.    Defendants shall pay, jointly and severally, restitution in the amount of one million three hundred thousand dollars ($1,300,000.00) ("Restitution Obligation"), representing the gains received in connection with such violations, plus post-judgment interest.

76.    Post-judgment interest shall accrue on the Restitution Obligation beginning on the date of entry of this Consent Order and shall be determined by using the Treasury Bill rate prevailing on the date of entry of this Consent Order pursuant to 28 U.S.C. § 1961 (2018).

77.    To effect payment of the Restitution Obligation and the distribution of any restitution payments to Members, the Court appoints the NFA as Monitor ("Monitor"). The Monitor shall receive restitution payments from Defendants and make distributions as set forth below. Because the Monitor is acting as an officer of this Court in performing these services, the NFA shall not be liable for any action or inaction arising from NFA's appointment as Monitor, other than actions involving fraud.

78.     Defendants shall make Restitution Obligation payments under this Consent Order to the Monitor in the name "*CFTC v. FuturesFX, et al.* – Settlement/Restitution Fund." Defendants shall send such Restitution Obligation payments by electronic funds transfer, or by U.S. postal money order, certified check, bank cashier's check, or bank money order, to the Office of Administration, National Futures Association, 300 South Riverside Plaza, Suite 1800, Chicago, Illinois 60606 under cover letter that identifies the paying Defendant and the name and docket number of this proceeding. Defendants shall simultaneously transmit copies of the cover letter and the form of payment to the Chief Financial Officer, Commodity Futures Trading Commission, Three Lafayette Centre, 1155 21st Street, NW, Washington, D.C. 20581 and Steven Kim, Senior Trial Attorney, Commodity Futures Trading Commission, Division of Enforcement, 1155 21st Street, N.W., Washington, D.C. 20581.

79.     The Monitor shall oversee the Restitution Obligation and shall have the discretion to determine the manner of distribution of such funds in an equitable fashion to Members identified by the Commission or may defer distribution until such time as the Monitor deems appropriate.  In the event that the amount of Restitution Obligation payments to the Monitor are of a *de minimis* nature such that the Monitor determines that the administrative cost of making a distribution to eligible clients is impractical, the Monitor may, in its discretion, treat such restitution payments as civil monetary penalty payments, which the Monitor shall forward to the Commission following the instructions for civil monetary penalty payments set forth in Part V.B. below.

80.     Defendants shall cooperate with the Monitor as appropriate to provide such information as the Monitor deems necessary and appropriate to identify Members to whom the Monitor, in its sole discretion, may determine to include in any plan for distribution of any

Restitution Obligation payments.  Defendants shall execute any documents necessary to release funds that they have in any repository, bank, investment, or other financial institution, wherever located, in order to make partial or total payment toward the Restitution Obligation.

81.     The Monitor shall provide the Commission at the beginning of each calendar year with a report detailing the disbursement of funds to Members during the previous year.  The Monitor shall transmit this report under a cover letter that identifies the name and docket number of this proceeding to the Chief financial Officer, Commodity Futures Trading Commission, Three Lafayette Centre, 1155 21st Street, N.W., Washington, D.C. 20581.

82.     The amounts payable to each Member shall not limit the ability of any Member from proving that a greater amount is owed from Defendants or any other person or entity, and nothing herein shall be construed in any way to limit or abridge the rights of any Member that exist under state or common law.

83.     Pursuant to Rule 71 of the Federal Rules of Civil Procedure, each Member who suffered a loss is explicitly made an intended third-party beneficiary of this Consent Order and may seek to enforce obedience of this Consent Order to obtain satisfaction of any portion of the disgorgement that has not been paid by Defendants to ensure continued compliance with any provision of this Consent Order and to hold Defendants in contempt for any violations of any provision of this Consent Order.

84.     To the extent that any funds accrue to the U.S. Treasury for satisfaction of Defendants' Restitution Obligation, such funds shall be transferred to the Monitor for disbursement in accordance with the procedures set forth above.

**B.      Civil Monetary Penalty**

85.      Defendants shall pay, jointly and severally, a civil monetary penalty in the amount of four hundred fifty thousand dollars ($450,000.00) ("CMP Obligation"), plus post-judgment interest.

86.      Post-judgment interest shall accrue on the CMP Obligation beginning on the date of entry of this Consent Order and shall be determined by using the Treasury Bill rate prevailing on the date of entry of this Consent Order pursuant to 28 U.S.C. § 1961.

87.      Defendants shall pay the CMP Obligation and any post-judgment interest by electronic funds transfer, U.S. postal money order, certified check, bank cashier's check, or bank money order.  If payment is to be made other than by electronic funds transfer, then the payment shall be made payable to the Commodity Futures Trading Commission and sent to the address below:

> MAC/ESC/AMK326
> Commodity Futures Trading Commission
> Division of Enforcement
> 6500 S. MacArthur Blvd.
> HQ Room 181
> Oklahoma City, OK 73169
> (405) 954-6569 office
> (405) 954-1620 fax
> 9-AMC-AR-CFTC@faa.gov

88.      If payment by electronic funds transfer is chosen, Defendants shall contact Marie Thorne or her successor at the address above to receive payment instructions and shall fully comply with those instructions.  Defendants shall accompany payment of the CMP Obligation with a cover letter that identifies the Defendant and the name and docket number of this proceeding.  Defendants shall simultaneously transmit copies of the cover letter and the form of payment to the Chief Financial Officer, Commodity Futures Trading Commission, Three

Lafayette Centre, 1155 21st Street, N.W., Washington, D.C. 20581, and Steven Kim, Senior

Trial Attorney, Commodity Futures Trading Commission, Division of Enforcement, 1155 21st

Street, N.W., Washington, D.C. 20581.

## C.    Provisions Related to Monetary Sanctions

89.    Partial Satisfaction:  Acceptance by the Commission or the Monitor of any partial

payment of Defendants' Restitution Obligation or CMP Obligation shall not be deemed a waiver

of their obligation to make further payments pursuant to this Consent Order, or a waiver of the

Commission's right to seek to compel payment of any remaining balance.

## VI. MISCELLANEOUS PROVISIONS

90.    Notice: All notices required to be given by any provision in this Consent Order

shall be sent certified mail, return receipt requested, as follows:

> Notice to Commission:
>
>> Richard A. Glaser, Deputy Director
>> Division of Enforcement
>> Commodity Futures Trading Commission
>> 1155 21st Street, N.W.
>> Washington, D.C.  20581
>
> Notice to Defendants
>
>> Jeffrey D. Barclay, Esq.
>> Howard & Howard
>> 200 South Michigan Avenue
>> Suite 1100
>> Chicago, IL  60604

All such notices to the Commission shall reference the name and docket number of this action.

91.    Change of Address/Phone:  Until such time as Defendants satisfy in full their

Restitution Obligation and CMP Obligation as set forth in this Consent Order, Defendants shall

provide written notice to the Commission by certified mail of any change to their telephone number and mailing address within ten (10) calendar days of the change.

92.     Entire Agreement and Amendments:  This Consent Order incorporates all of the terms and conditions of the settlement among the parties hereto to date.  Nothing shall serve to amend or modify this Consent Order in any respect whatsoever, unless:  (a) reduced to writing; (b) signed by all parties hereto; and (c) approved by Order of this Court.

93.     Invalidation:  If any provision of this Consent Order or if the application of any provision or circumstance is held invalid, then the remainder of this Consent Order and the application of the provision to any other person or circumstance shall not be affected by the holding.

94.     Waiver:  The failure of any party to this Consent Order or of any Member at any time to require performance of any provision of this Consent Order shall in no manner affect the right of the party or Member at a later time to enforce the same or any other provision of this Consent Order.  No waiver in one or more instances of the breach of any provision contained in this Consent Order shall be deemed to be or construed as a further or continuing waiver of such breach or waiver of the breach of any other provision of this Consent Order.

95.     Waiver of Service, and Acknowledgement:  Defendants waive service of this Consent Order and agree that entry of this Consent Order by the Court and filing with the Clerk of the Court will constitute notice to Defendants of its terms and conditions.

96.     Continuing Jurisdiction of this Court:  This Court shall retain jurisdiction of this action to ensure compliance with this Consent Order and for all other purposes related to this action, including any motion by Defendants to modify or for relief from the terms of this Consent Order.

97.     Injunctive and Equitable Relief Provisions:  The injunctive and equitable relief provisions of this Consent Order shall be binding upon Defendants, upon any person under their authority or control, and upon any person who receives actual notice of this Consent Order, by personal service, e-mail, facsimile, or otherwise insofar as he or she is acting in active concert or participation with Defendants.

98.     Authority:  FuturesFX hereby warrants that Simon Jousef is the Owner of FuturesFX and that this Consent Order has been duly authorized by FuturesFX, and Simon Jousef has been duly empowered to sign and submit this Consent Order on behalf of FuturesFX.

99.     Counterparts and Facsimile Execution:  This Consent Order may be executed in two or more counterparts, all of which shall be considered one and the same agreement and shall become effective when one or more counterparts have been signed by each of the parties hereto and delivered (by facsimile, e-mail, or otherwise) to the other party, it being understood that all parties need not sign the same counterpart.  Any counterpart other signature to this Consent Order that is delivered by any means shall be deemed for all purposes as constituting good and valid execution and delivery by such party of this Consent Order.

100.    Contempt:  Defendants understand that the terms of the Consent Order are enforceable through contempt proceedings, and that, in any such proceedings they may not challenge the validity of this Consent Order.

101.    Agreements and Undertakings:  Defendants shall comply with all of the undertakings and agreements set forth in this Consent Order.

There being no just reason for delay, the Clerk of the Court is hereby ordered to enter this *Consent Order for Permanent Injunction, Civil Monetary Penalties, and Other Equitable Relief Against Defendants FuturesFX and Simon Jousef* forthwith and without further notice.

IT IS SO ORDERED on this 22nd day of ___April___, 2020.

_____
HON. PAUL A. ENGELMAYER
UNITED STATES DISTRICT JUDGE

CONSENTED TO AND APPROVED BY:

For Defendant FUTURESFX:                               For Plaintiff:

_____                       _____
Simon Jousef                                          Steven Kim
Owner, FuturesFX                                      Senior Trial Attorney
                                                      Division of Enforcement
Dated: Feb 28 /2020                                   Commodity Futures Trading Commission
                                                      1155 21st Street, N.W.
                                                      Washington, D.C.  20581


For Defendant SIMON JOUSEF, Individually

_____
SIMON JOUSEF

Dated: Feb 26 /2020


Approved as to form:


_____
JEFFREY D. BARCLAY, ESQ.
Howard & Howard
200 South Michigan Street
Suite 1100
Chicago, IL  60604

Attorney for FUTURESFX and SIMON JOUSEF

CONSENTED TO AND APPROVED BY:

For Defendant FUTURESFX:                    For Plaintiff:

_____                    _____
Simon Jousef                               Steven Kim
Owner, FuturesFX                           Senior Trial Attorney
                                           Division of Enforcement
Dated: _____                     Commodity Futures Trading Commission
                                           1155 21st Street, N.W.
                                           Washington, D.C.  20581

For Defendant SIMON JOUSEF, Individually

_____
SIMON JOUSEF

Dated: _____

Approved as to form:

_____
JEFFREY D. BARCLAY, ESQ.
Howard & Howard
200 South Michigan Street
Suite 1100
Chicago, IL  60604

Attorney for FUTURESFX and SIMON JOUSEF

CONSENTED TO AND APPROVED BY:

For Defendant FUTURESFX:                              For Plaintiff:

_____
Simon Jousef                                         Kathleen A. Banar
Owner, FuturesFX                                     Chief Trial Attorney
                                                     Steven Kim
Dated: _____                                        Senior Trial Attorney
                                                     Division of Enforcement
                                                     Commodity Futures Trading Commission
                                                     1155 21st Street, N.W.
                                                     Washington, D.C.  20581


For Defendant SIMON JOUSEF, Individually


_____
SIMON JOUSEF

Dated: _____


Approved as to form:


_____
JEFFREY D. BARCLAY, ESQ.
Howard & Howard
200 South Michigan Street
Suite 1100
Chicago, IL  60604

Attorney for FUTURESFX and SIMON JOUSEF

27